IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALFREDO RODRIGUEZ-MUÑOZ

Plaintiff

vs                                                    CIVIL 09-2150CCC

WALGREENS DE PUERTO RICO, INC.
CUERPO DE EMERGENCIAS MEDICAS
DEL ESTADO LIBRE ASOCIADO DE
PUERTO RICO;
JOHN DOE AND RICHARD ROE
INSURANCE COMPANY

Defendants

## OPINION AND ORDER

This diversity action arises from a slip and fall in the Walgreens Pharmacy which allegedly resulted in fatal injuries to Francisco Rodríguez-Muñoz.  Plaintiff Alfredo Rodríguez Muñoz, brother of the deceased, seeks an award of monetary damages as compensation for the loss of his brother.  Before the Court is defendant Emergency Medical Corps of the Commonwealth of Puerto Rico's (EMC) Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (**docket entry 8**), which plaintiff opposed (docket entry 11).

Defendant alleges that it is entitled to Eleventh Amendment immunity because it is an arm of the state, and implies that, because the ambulance took the deceased to the hospital of his son's choice, which it avers was closer than the medical center, EMC should not be held responsible.

With regard to its Eleventh Amendment immunity, EMC avers that it was "created .. . under the Department of Health of Puerto Rico.  As such, it receives most of its funding from the Department of Health of Puerto Rico, constituting an arm of the State," and that "the real defendant in this case is the Commonwealth of Puerto Rico."  Motion to Dismiss, at 6.  In response to the sovereign immunity issue, plaintiff conclusorily states in his opposition that because EMC has fiscal and administrative autonomy, "[t]his means it is separate from the Commonwealth of Puerto Rico."  Id., at 4.  Plaintiff further argues that

CIVIL 09-2150CCC                        2

because movant "has not placed this Honorable Court in a position to determine whether it is an entity protected by the Eleventh Amendment and has fiscal and administrative autonomy, this claim should also be denied."

Neither party has cited case law that has decided the question of whether EMC is considered and arm or agency of the Puerto Rico government for purposes of Eleventh Amendment Immunity. Nor has either one  analyzed the issue. Plaintiff, inviting the court to "do-it-yourself," has provided an English translation of the law creating the EMC–Act 539 of September 30, 2004--as an exhibit. We note that the burden of proving that Eleventh Amendment immunity applies rests with defendant EMC. <u>Pastrana-Torres v. Corporación de Puerto Rico Para la Difusión Pública</u>, 460 F.3d. 124, 126 (1st Cir. 2006).

**Analysis**

As noted by the First Circuit in <u>Breneman v. U.S. ex rel. F.A.A.</u>, 381 F.3d. 33, 39 (1st Cir. 2004), a two-step test is often employed to determine if an entity is an "arm of the state."

> . . . In the first step, we look at structural factors to determine whether 'the state clearly structured the entity to share its sovereignty.' . . . However, '[i]f the factors assessed in analyzing the structure point in different directions, then the dispositive question concerns the risk that the damages will be paid from the public treasury.... This analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness.'

<u>Id</u>. (Citations omitted.)

This two-stage framework explicitly recognizes the Eleventh Amendment's twin interests:  protection of the fisc and the dignity of the states. <u>Redondo Const. Corp. v. Puerto Rico Highway and Transp. Authority</u>, 357 F.3d. 124, 126 (1st Cir. 2004). "A state's choice to establish an entity excluded from the protection of its sovereign immunity implicates important policy concerns[.]" <u>Id.</u>, at 127.

> Not all entities created by states are meant to share state sovereignty.  Some entities may be part of an effort at

CIVIL 09-2150CCC                                    3

> privatization, representing an assessment by the state that the
> private sector may perform a function better than the state. . . .
> Some entities may be meant to be commercial enterprises,
> viable and competitive in the marketplace in which they operate.
> Such enterprises may need incentives to encourage others to
> contract with them, such as incentives of application of usual
> legal standards between private contracting parties. The dollar
> cap on recovery found in many state sovereign immunity
> statutes would be a powerful disincentive to a private party to
> contract with an entity, unless the private party first obtained a
> waiver of immunity for the entity. . . . In Puerto Rico, a breach
> of contract action against the Commonwealth is capped at
> $75,000.
>
> ....
>
> . . . In sum, states set up entities for many reasons. An
> erroneous arm-of-the-state decision may frustrate, not advance,
> a state's dignity and its interests.

Fresenius Med. Care Cardiovascular Resources, Inc. v. Puerto Rico & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d. 56, 64 (1st Cir. 2003). (Citations omitted.)

While the determination of whether the Commonwealth has structured EMC to share its sovereignty is a question of federal law, it can be answered only after consulting the provisions of the Commonwealth statute that defines EMC's character. See, Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 n.5 (1997).

The law states its purpose is to create EMC

> . . . to be attached to the Department of Health of the
> Commonwealth of Puerto Rico, and to have fiscal and
> administrative autonomy; to provide for its organization,
> purposes, duties, functions, powers; to create the Special Fund
> of the Emergency Medical Corps; to establish penalties for non-
> compliance therewith...."

Act No. 539 of September 30, 2004,[1] first paragraph. (Our emphasis.)

The statute's Explanatory Statement provides, in pertinent part:

> The Health Department is the agency responsible for drawing up
> and implementing the constitutional and legal mandate of
> tending to and working on all matters relative to health. It

_____

[1]Official Translation.

CIVIL 09-2150CCC                              4

> therefore ensues that the next logical and convenient step is to integrate efforts to address the rendering of pre-hospital care services and transportation to medical hospital or first aid facility corresponding to the Department of Health and the Secretary of Health to enforce the constitutional and legal mandate to service and manage all aspects related to health.
>
> The Legislature deems to be integrated into the Department of Health the government resources of the Commonwealth of Puerto Rico allocated to guarantee to citizens in general a high quality service when unforeseeably a health condition requires pre-hospital medical and transportation to a medical facility or first aid to safeguard their health and reduce harm or permanent disability that may arise as a result of illness or accident. . . . For these purposes [the Legislature] creates the Medical Emergencies Corps of Puerto Rico, under the Department of Health.

Id. (Our emphasis.)

EMC has not been created as a public corporation; the law does not give EMC an independent juridical personality; its power to sue is limited:  Article 8(o) of the statute restricts EMC to "Appearing in court only through the Secretary of Justice to initiate appropriate action in accordance with law and regulations."  Article 2 provides, in pertinent part, that "Emergency Medical Corps is the agency responsible for carrying out the programs of the Government of the Commonwealth of Puerto Rico...."

The first-step analysis does not squarely place the EMC within the Department of Health's sovereign immunity.  Nor is the agency specifically excluded. The fact that the EMC has expanded fiscal and administrative autonomy, that is, that it can manage its own budget and administration, does not necessarily make it an entity separate from the government. More so, especially when it is repeatedly stated in the law that EMC is created "under the Department of Health."  See, e.g. Article 4.

There being no definitive answer in the first-step analysis, we move to the second step.  Article 5 provides, in pertinent part, that the Superintendent of Police take the necessary administrative measures to transfer to EMC, "[t]he funds needed for continuation of services of [EMC] [that] were allocated in the General Budget of Expenses of the

CIVIL 09-2150CCC                                    5

Government of the commonwealth of Puerto Rico."  Article 6(e) recognizes that EMC "shall have power to generate their own resources and to bill third parties for the services provided."  Id.  However, "Funds raised by these concepts will enter the Fund Emergency Medical Corps as recovery of operation costs incurred. The  funds raised under this provision will be used . . . to supplement staff salaries or improve services and facilities of the [EMC]."  Id.  (Our emphasis.)  Article 8(i) grants EMC's Director the power

> [T]o request and receive donations of money and property from the federal government or any natural person, private or public entity, whether in trust or in property or in any other way. Provided that donations are used exclusively to meet the objectives of this law. In the case of money or any other financial aid, funds received must be deposited in the special fund created under this Act.

These funds, as can be seen are to be used for specific purposes.  There is nothing provided in the statute that anticipates paying a judgment from the funds that EMC independently collects or receives.  That EMC funding comes from the Commonwealth is found in Section 8(u): "Develop and submit the budget request to the Office of Management and Budget of the Commonwealth of Puerto Rico."  Id.  That is, the EMC is primarily supported by the public fisc.

In sum, it is evident that the primary, relied-upon source of funding for the EMC, and which would necessarily provide for payment of an award of damages, is the money budgeted by the Commonwealth.  We, therefore, find that EMC is an arm of the Commonwealth, protected by its sovereign immunity.  Accordingly, its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)  (**docket entry 8**) is GRANTED.

CIVIL 09-2150CCC                          6

Partial Judgment dismissing the action against Cuerpo de Emergencias Médicas del Estado
Libre Asociado de Puerto Rico shall be entered.

SO ORDERED.

At San Juan, Puerto Rico, on September 30, 2010.

S/CARMEN CONSUELO CEREZO
United States District Judge